Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| LUZ CELENIA BÁEZ MARTÍNEZ<br><br>Apelante<br><br>V.<br><br>NAVE, INC. H/N/C SUPERMERCADOS ECONO<br><br>Apelados | TA2025AP00225<br><br>Consolidado con<br><br>TA2025AP00301 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.: CG2024CV00725<br><br>Sobre: Despido Injustificado, Represalia, Discrimen por Género |
|---|---|---|

Panel integrado por su presidenta; la Juez Lebrón Nieves, el Juez Pagán Ocasio y la Jueza Álvarez Esnard

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 25 de septiembre de 2025.

El 31 de julio de 2025, compareció ante este Tribunal de Apelaciones, la señora Luz C. Báez Martínez (en adelante, señora Báez Martínez), por medio de recurso de *Apelación* con identificación alfanumérica TA2025AP00225. Por otro lado, el 29 de agosto de 2025, NAVE, Inc. H/N/C Supermercados Econo (en adelante, NAVE), presentó recurso de *Apelación* con identificación alfanumérica TA2025AP00301. Mediante sus respectivos recursos, las partes nos solicitan que revisemos la *Sentencia Sumaria* dictada el 21 de julio de 2025 y notificada el 30 de julio de 2025, por el Tribunal de Primera Instancia, Sala Superior de Caguas. En virtud del aludido dictamen, el foro *a quo* desestimó con perjuicio la *Querella* presentada por la señora Báez Martínez.

Por los fundamentos que adelante se esbozan, se *modifica* el dictamen apelado a los fines de disponer que, el periodo probatorio de aplicación es el de nueves (9) meses, establecido por la Ley Núm. 80-1976, *infra*, según enmendada, y así modificada, se confirma.

**I**

Los hechos que propiciaron el recurso ante nos, se remontan a una *Querella* instada por la señora Báez Martínez, en contra de NAVE por alegado despido injustificado, represalia y discrimen de género, al amparo de la Ley Núm. 2 de 17 de octubre de 1961, según enmendada. Primeramente, identificó a NAVE como el patrono querellado, y que era quien operaba los Supermercados Econo de Bairoa y Villa del Carmen en Caguas, PR. Alegó que, el 8 de marzo de 2023, comenzó a trabajar como empleada de mantenimiento en el Supermercado Econo de Bairoa. La señora Báez Martínez expresó que, el 18 de mayo de 2023, tuvo un accidente de tránsito y que, como consecuencia, sufrió lesiones físicas que requirieron tratamiento en la Administración de Compensaciones por Accidentes de Automóviles (ACAA). Esta, además alegó que, le informó al patrono sobre el accidente y las alegadas lesiones sufridas. No obstante, aseguró que el patrono, en lugar de otorgarle un acomodo razonable, comenzó a colocarla en turnos rotativos y a asignarle tareas de mayor carga física, convirtiéndose en la única empleada de mantenimiento. Explicó que, entre dichas tareas se encontraba el limpiar neveras por dentro y por fuera, y que ello, le afectaba su salud. Aseguró haberle informado tal situación a su patrono, pero que este no la relevó de realizar tales tareas.

Asimismo, la señora Báez Martínez sostuvo que, antes del 21 de agosto de 2023, su supervisora inmediata le increpó sobre su horario de salida, y que le mencionó que era a las 6:00 pm, en lugar de las 5:00 pm. Ante esto, alegó que le informó de forma respetuosa a su supervisora que el horario establecido para su salida era a las 5:00 pm, pero que, esta le gritó y le faltó el respeto. Posteriormente, la señora Báez Martínez indicó que, acudió donde el gerente para quejarse del "ambiente hostil" creado por la supervisora. Sin embargo, adujo que el gerente le respondió "calladita te ves más

bonita". De igual manera, la señora Báez Martínez, acotó que, el 21 de agosto de 2023 fue llamada a Recursos Humanos, donde le cuestionaron sobre lo sucedido, y le preguntaron si estaba dispuesta a trasladarse a la otra localidad, a lo que ella respondió afirmativamente. El mismo día, en la Oficina de Recursos Humanos, se le informó a la señora Báez Martínez su despido.

En la acción interpuesta ante el foro primario, la señora Báez Martínez alegó que, su despido constituyó una represalia en violación a las disposiciones de la Ley Núm. 115 de 20 de diciembre de 1991, según enmendada; una violación a: la Ley Núm. 44 de 2 de julio de 1985, según enmendada, la Ley Núm. 100 de 30 de junio de 1959, según enmendada y a la Ley Núm. 69 de 6 de julio de 1985, según enmendada. Reclamó una partida de $20,000.00 por concepto de salarios dejados de percibir y una partida de $80,000.00 por concepto de daños. En la alternativa, reclamó indemnización al amparo de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada (Ley Núm. 80).

En respuesta, NAVE presentó la *Contestación a Querella*. En primer lugar, afirmativamente estableció que, el caso de epígrafe debía ser ventilado bajo el procedimiento ordinario. Afirmó que, la señora Báez Martínez había sido contratada para la posición de empleada de mantenimiento y asignada al establecimiento de Bairoa, Caguas. NAVE añadió que, al momento de la contratación de la señora Báez Martínez, esta fue asignada a desempeñarse en la única posición de empleada de mantenimiento disponible en el establecimiento de Bairoa. Por lo anterior, la expresión realizada en la *Querella*, sobre que la situación la convirtió en la única empleada que hacía mantenimiento era falsa e insidiosa. Asimismo, NAVE arguyó que, a solicitud de la señora Báez Martínez, dado a que mencionó que enfrentaba dificultad al realizar las tareas de mantenimiento y limpieza de piso, le ofrecieron la oportunidad de

asignarle la tarea de limpieza de neveras en las áreas de *Produce* del supermercado de manera temporera. Es decir, que, la señora Báez Martínez solicitó el cambio de tareas de mantenimiento. Explicó que, lo acontecido entre la supervisora y la señora Báez Martínez, se basó en que esta última, le respondió a la supervisora de forma alterada e irrespetuosa frente a clientes de la empresa, en el área de las cajas registradoras. Igualmente, NAVE adujo que, posteriormente se citó a la señora Báez Martínez a la oficina de Recursos Humanos, con el propósito de entrevistarle sobre el incidente y la conducta exhibida. Indicó que, como resultado del proceso, en la tarde se le remitió un correo electrónico a la señora Báez Martínez junto a una carta de culminación de contrato en período probatorio. Dicha carta fue enviada también mediante correo certificado con acuse de recibo.

Además, NAVE aseguró que, la señora Báez Martínez fue despedida dentro del período probatorio dispuesto por ley, que exime al patrono de establecer justa causa para la terminación del empleo. Alegó también que, a la fecha de la terminación de empleo, la señora Báez Martínez había expresado que no se encontraba en posición de llevar a cabo las funciones esenciales del puesto para el cual fue contratada. De igual manera, NAVE negó que la señora Báez Martínez fuera objeto de trato desigual alguno, por razón de su género o por alguna otra razón. También, NAVE adujo que, en la reclamación de la señora Báez Martínez no estaban presentes los elementos necesarios para establecer una reclamación de represalias. Puesto que, no había incurrido en una acción protegida ni fue objeto de represalias en el empleo. Asimismo, afirmó que, la señora Báez Martínez no tenía derecho a remedio alguno al amparo de la Ley Núm. 44-1985, de la Ley Núm. 100 de 30 de junio de 1959, ni de la Ley Núm. 69-1985. Añadió que, la señora Báez Martínez tampoco tenía derecho a remedio en concepto de salarios dejados de percibir ni por daños por angustias mentales. Sobre el reclamo de

indemnización de mesada al amparo de la Ley Núm. 80-1976, NAVE mencionó que la señora Báez Martínez no tenía derecho a esta debido a que fue despedida dentro del periodo probatorio dispuesto por el estatuto. Por todo lo anterior, NAVE le solicitó al foro de primera instancia que declarara No Ha Lugar la *Querella*.

El 16 de abril de 2024, NAVE presentó una *Solicitud de Conversión al Procedimiento Ordinario*. En la *Conferencia Inicial* celebrada el 16 de mayo de 2024, el Tribunal de Primera Instancia declaró Con Lugar dicha moción.

Así las cosas, el 24 de marzo de 2025, NAVE presentó la *Solicitud de Sentencia Sumaria*. En su moción, sugirió setenta (70) hechos que, a su juicio, no estaban en controversia. Argumentó que, las alegaciones demostraban que, no existía controversia real sustancial en cuando a ningún hecho material relevante a las causas de acción contenidas en la *Querella*. Reiteró que, el reclamo de la señora Báez Martínez respecto a la mesada bajo la Ley Núm. 80-1976, *infra*, era inmeritorio, en la medida en que esta fue despedida dentro del periodo probatorio automático de nueve (9) meses estatuido. Añadió que, el aludido estatuto dispone que, el despido de un empleado probatorio no estará sujeto a los requisitos de indemnización contemplados en dicha Ley.

Por su parte, la señora Báez Martínez presentó la *Moción en Oposición a Solicitud de Sentencia Sumaria*. De entrada, sostuvo que, el planteamiento de NAVE respecto a que la señora Báez Martínez era empleada en periodo probatorio y podía ser despedida a discreción era erróneo. Adujo que, mediante el contrato y de conformidad al manual del empleado, el cual era parte del contrato de empleo, el periodo probatorio se acortó a tres (3) meses. Asimismo, admitió y negó algunos hechos, y propuso cuarenta (40) determinaciones de hechos, donde hizo referencia a una deposición tomada a la señora Báez Martínez. Alegó, además que, al momento

del despido era empleada regular conforme al manual de empleados. Reiteró que, fue despedida de manera injustificada. De igual forma, adujo que, NAVE conocía que, la señora Báez Martínez necesitaba un acomodo razonable, pero que, le aumentó la carga de trabajo y violentó la Ley Núm. 44-1985. Añadió que, varias veces le solicitó acomodo razonable, pero que, su patrono ignoró tal solicitud.

Por otro lado, en su oposición a la solicitud de sentencia sumaria, la señora Báez Martínez alegó que, no se le trasladó a la localidad de Villa del Carmen por ser mujer, y que, dicha conducta discriminatoria estaba prohibida por la Ley Núm. 100 de 30 de junio de 1959. Argumentó que, no procedía la solicitud de sentencia sumaria dado a que existían hechos en controversia que ameritaban una vista en los méritos.

El 12 de mayo de 2025, NAVE presentó *Réplica a Moción en Oposición a Solicitud de Sentencia Sumaria.* Sostuvo que, la señora Báez Martínez no logró controvertir hechos que estaban debidamente sustentados. Respecto a los hechos propuestos por la señora Báez Martínez, NAVE alegó que algunos de ellos no hacían referencia a alguna prueba admisible en evidencia, y que, otros, no estaban sustentados por la referencia incluida. Asimismo, indicó que, otros de los hechos propuestos por la señora Báez Martínez se encontraban controvertidos por los hechos propuestos por NAVE en su solicitud de sentencia sumaria, por prueba admisible en evidencia y por una declaración jurada anejada a su réplica. Así como, que algunos de los mencionados hechos inducían a error, dado a que representaban de manera incompleta, parcial o incorrectamente el testimonio brindado por la señora Báez Martínez en su deposición. Nuevamente, argumentó que, el despido de la señora Báez Martínez no estaba sujeto a los requisitos de indemnización dispuestos en la Ley Núm. 80-1976. Lo anterior, dado a que, el despido de la señora Báez Martínez fue llevado a cabo

dentro del periodo probatorio de nueve (9) meses dispuesto por ley y acordado entre la partes en el contrato de empleo. Por tanto, sugirió que procedía la desestimación de la causa de acción presentada al amparo de la Ley Núm. 80-1976.

La señora Báez Martínez presentó la *Dúplica a Solicitud de Sentencia Sumaria*. Mediante esta, reafirmó su postura en cuanto a que era de aplicación el periodo probatorio de noventa (90) días dispuesto en el Manual de Empleados. Puesto que, dicho manual formó parte del contrato de empleo. Aseguró que, no procedía que se dictara sentencia sumaria, en la medida en que existía controversia de hechos que ameritaban una vista en sus méritos.

Finalmente, el foro de primera instancia emitió la *Sentencia Sumaria* cuya revisión nos ocupa. En la misma esbozó los siguientes hechos no controvertidos[1]:

1. Nave, Inc. es la entidad corporativa que administra y opera los establecimientos Supermercados Econo ubicados en: Bairoa Caguas; Villa del Carmen, Caguas; Condado Moderno, Caguas; Cayey y Salinas.

2. El 8 de marzo de 2023, la querellante suscribió un contrato de empleo para ocupar la posición de empleada de mantenimiento a partir del 9 de marzo de 2023.

3. La querellante nació el 17 de septiembre de 1961, por lo que, a la fecha de su contratación, la querellante tenía 61 años.

4. La Sra. Melissa Dávila, Gerente de Recursos Humanos de la querellada, llevó a cabo el proceso de contratación de la querellante.

5. La posición de empleada de mantenimiento es una no exenta.

6. La querellante fue asignada al establecimiento de Bairoa.

7. El contrato de empleo suscrito por la señora Báez expresamente dispone que "ha sido contratada mediante un contrato probatorio de empleo automático según establecido por ley".

---

[1] Advertimos que, la numeración de las determinaciones de hechos omite y repite varios números, por lo cual no tiene la debida secuencia numérica. No obstante, entendemos que ello obedece a un error clerical. Con el propósito de salvaguardar la exactitud del texto original, mantenemos inalterada su numeración.

8. El contrato de empleo suscrito por la querellante dispone que, dentro del período probatorio, el Patrono podrá prescindir de sus servicios en cualquier momento, con o sin notificación previa y que en ese caso sólo tendrá derecho a recibir el salario devengado y no pagado y la liquidación de los días de vacaciones acumulados y no disfrutados.

9. El contrato de empleo suscrito por la señora Báez Martínez dispone que es una función esencial del puesto estar disponible para trabajar horarios flexibles, turnos rotativos y horas extras cuando las necesidades operaciones y de servicio lo requieran.

10. El contrato de empleo suscrito por la señora Báez Martínez establece que, como empleada, ésta se compromete a cumplir con las responsabilidades y obligaciones del puesto y con los que de tiempo en tiempo le asignen sus superiores.

11. A la fecha de su contratación, la Compañía entregó a la querellante el Manual de Empleados y políticas de la empresa y la querellante acusó recibo de estas.

12. Las funciones de la querellante como empleada de mantenimiento eran, entre otras:

- Limpieza de baños cada una (1) hora.

- Barrer y mapear oficinas de servicio al cliente, scanning, recibo y gerente.

- Barrer y mapear cuarto de descanso, limpiar mesa y microondas. • Barrer bajo mesas de Produce.

- Limpieza de mesa de Produce.

- Verificar dispensadores de jabón, papel y "hand sanitizer" en los distintos departamentos.

- Sacar basura de zafacones.

- Limpieza de cristales de la entrada de la tienda, incluyendo servicio al cliente.

- Limpieza profunda de canastas.

- Limpieza de la base de los "racks" del Produce.

- Limpieza de bordes de nevera y cristales del Dairy.

- Barrer y mapear detrás de las barandas de las neveras del Dairy.

- Limpieza [p]rofunda del área exterior de recibo, con máquina de presión.

- Rondas preventivas para confirmar condición de piso.

13. La querellante registraba su asistencia a través del sistema electrónico colocando su huella, así como que completaba una Hoja de Asistencia Diaria.

14. Durante su período de empleo en la empresa, las siguientes personas ejercían función de supervisión sobre las funciones realizadas por la querellante: Claudia Ruiz, Gerente de Front End y Pablo Aponte, Gerente de la tienda de Bairoa. En la eventualidad de que la señora Ruiz o el señor Aponte no se encontraran presentes en tienda, Wilfredo Rivera, Asistente de Gerente de la Tienda y/o Sandra López, Supervisora de Front End, asumían de manera ocasional la función de supervisión de la querellante.

15. El 18 de mayo de 2023, encontrándose en su día libre de empleo, la querellante sufrió un accidente de auto que requirió atención en Sala de Emergencias y fue dada de alta el día 19 de mayo de 2023.

16. Como resultado del accidente, la querellante no tuvo que ser intervenida quirúrgicamente, no sufrió fractura de huesos y no se le colocó un yeso.

17. La querellante alegó en su deposición que se le "dislocaron tendones" del hombro derecho y que estuvo tomando terapias por un año.

18. Al ser dada de alta, la querellante le entregó a la Compañía, a través de la Sra. Melissa Dávila, una certificación emitida por el Hospital que establece que podía regresar al trabajo el 21 de mayo de 2023.

19. El certificado médico del Hospital no hace referencia a lesiones sufridas como resultado del accidente ni establece restricciones de trabajo.

20. El 22 de mayo de 2023, la querellante acudió a la Administración de Compensaciones por Accidentes de Automóviles (ACAA) y presentó su reclamación.

21. El Dr. Juan Torres Hurtado, médico al cual fue referida por la ACAA, emitió un certificado médico que dispuso reposo para la querellante hasta el 31 de mayo de 2023, autorizándoles a trabajar a partir del 1ro de junio de 2023. La querellante entregó el certificado médico a la Sra. Melissa Dávila.

22. El certificado médico emitido por el doctor Torres Hurtado no hace referencia a restricciones de trabajo o tareas que puede o no puede hacer la querellante.

23. La querellante se reportó a trabajar el 1ro de junio de 2023 y fue reinstalada en turnos de ocho (8) horas con horarios de entrada que podían variar entre 5:00 a.m., 6:00 a.m., 7:00 a.m. y 8:00 a.m.; horarios y turnos que trabajaba antes de su accidente.

24. La querellante trabajó turnos con horas de salida en la noche en una o dos ocasiones. Cuando le comunicó al Sr. Pablo Aponte que no le gustaba ese turno, el resto de los turnos le fueron asignados en horas de la mañana.

25. La querellante alega que luego de su accidente tenía los "tendones esgarraos" y no podía levantar los brazos.

27. La Compañía no mantiene en sus registros documento alguno que refiera a restricción de tareas o funciones en relación con la querellante.

28. Cuando se reincorporó a trabajar luego del accidente, la querellante fue asignada de manera temporera al área del ¨Produce¨ (frutas y vegetales).

29. El acomodo que la querellante quería era que se le asignara a acomodar las mesas del produce, acomodar las verduras y ayudar los clientes del ¨Produce¨.

30. Las tareas que la querellante quería realizar no corresponden a tareas mantenimiento y eran unas tareas distintas a las que se le contrató.

31. La querellante alegó en su deposición que había solicitado al Sr. Pablo Aponte, Gerente de la tienda, que la dejara en el área de ¨Produce¨.

32. La querellante no presentó por escrito una solicitud para realizar las tareas del Produce.

33. La querellante no solicitó a la Sra. Melissa Dávila de Recursos Humanos que se le colocara en el ¨Produce¨.

34. En junio de 2023, la querellante le solicitó a la Sra. Melissa Dávila que se le asignara como empleada de mantenimiento en otra de las tiendas de la Compañía. En dicha ocasión la Sra. Dávila le comunicó a la querellante que la tienda de Condado Moderno estaba sin empleado de mantenimiento y le ofreció esa posición a la querellante. La querellante rechazó el ofrecimiento.

35. La querellante alegó en su deposición que cuando en la querella indica que se le asignó tareas de mayor carga física, se refiere a que se le asignó la limpieza de neveras y limpieza de pisos.

36. La querellante alega que desde que reincorporó luego de su accidente, limpió las neveras "como en dos ocasiones".

37. La querellante no acudió ante Recursos Humanos para indicar que no quería realizar la tarea de limpieza de pisos.

38. Compañeros de trabajo de la querellante le ayudaban a sacar las parrillas de la nevera y a buscar materiales en el almacén.

40. Desde la fecha de su contratación y hasta la fecha de su terminación, la querellante era la única empleada de mantenimiento de la tienda de Bairoa.

41. La querellante fue contratada con un salario a razón de $8.50 por hora. Por razón del aumento de salario mínimo, efectivo al 1ro de julio de 2023, la querellante comenzó a devengar un salario por hora de $9.50. 42. Entre el 10 de julio de 2023 y el 16 de julio de 2023 la querellante disfrutó de una licencia de enfermedad conforme a la certificación médica sometida.

43. El 20 de agosto de 2023, la Sra. Claudia Ruiz, supervisora inmediata de la querellante, estaba cobrando en el área de las cajas. Aproximadamente a las 4:30 p.m. la querellante pasó por las cajas a recoger las bolsas de basura de los zafacones y la supervisora Claudia le preguntó si ya había limpiado los baños. La querellante respondió que sí y que había botado la basura de "todos lados" porque salía de su turno a las 5:00 p.m. Acto seguido, la supervisora Claudia le indica a la querellante que no le tocaba a salir las 5:00 p.m., que saldría a las 6:00 p.m. porque no tenía empleada de mantenimiento. Ante ello, la querellante le respondió a su supervisora: "yo simplemente te dije que salgo a las 5:00 p.m., por eso estoy recogiendo aquí, y me voy."

> R· · Cuando ya -- como yo dije, pues yo salgo ·
> · · · · a las 5:00.· Pues ya a las 4:30 más o menos, ·
> · · · · pues, yo pasé por las cajas a recoger las ·
> · · · · bolsitas de los zafacones. ·
>
> · · · · P· · De basura.· Okey. ·
>
> · · · · R· · La basura.· Y entonces ella me mira y me ·
> · · · · increpa, "¿Ya limpiaste los baños?", pero así ·
> · · · · (gesticulando).
>
> · · P· · Okey.
>
> · · · ·R· · Y yo le contesté, "Sí.· Ya yo limpié los
> · · · ·baños.· Boté las basuras de todos lados y lo que
> · · · ·me falta es esta, porque yo me voy a las 5:00".
> · · · ·Y ahí esa mujer abrió los ojos bien grandes y
> · · · ·me dijo, "Cómo que a las 5:00.· A ti no te toca
> · · · ·a las 5:00.· Tú te vas de aquí a las 6:00.· Yo

· · · ·no tengo mantenimiento y tú no te me puedes
    ir
· · · ·de aquí".· Pero delante de todo el mundo, sabe.
· · · ·Yo te lo estoy diciendo suave, pero ella me lo
· · · ·dijo de una forma más -- sabe, delante de los
· · · ·clientes, como regañándome.

45. La interacción del 20 de agosto de 2023 entre la querellante y su supervisora sucedió frente a clientes y personas.

46. La Sra. Melissa Dávila fue informada por el Sr. Pablo Aponte, Gerente, de la conducta exhibida por la querellante el 20 de agosto de 2023 y requirió que la querellante acudiera a la oficina de Recursos Humanos el 21 de agosto de 2023.

46. El 21 de agosto de 2023, la querellante llegó a trabajar; el gerente Pablo le impartió unas instrucciones y le indicó que se él se (sic) iría para Salinas. Cerca de las 9:00 a.m., el señor Betancourt, "jefe del Produce" le dijo a la querellante que lo habían llamado de Recursos Humanos para decirle que la querellante debía presentarse en la oficina de Recursos Humanos. La querellante ponchó su salida y fue a la oficina de Recursos Humanos.

48. La oficina de Recursos Humanos no está ubicada en la tienda de Bairoa donde la querellante trabajaba. Está ubicada en la tienda de Condado Moderno.

49. El 21 de agosto de 2023 la querellante se reunió en la oficina de Recursos Humanos con la Sra. Melissa Dávila, con el propósito de atender el asunto relacionado al incidente ocurrido el 20 de agosto de 2023 frente a las cajas registradoras.

50. En la tarde del 21 de agosto de 2023, la querellante recibió un correo electrónico en el que se le notificó su terminación de empleo.

51. La señora Melissa Dávila, Gerente de Recursos Humanos es quien ejecutó la determinación de terminar el empleo de la querellante dentro de su período probatorio.

52. La señora Melissa Dávila le notificó la terminación a la querellante mediante comunicación electrónica y mediante correo certificado y con acuse de recibo.

53. A la fecha de su terminación, la querellante tenía 61 años. La querellante señaló en su deposición que una mujer de nombre Carmen ocupó la posición de empleada de mantenimiento en la tienda de Bairoa antes de ella comenzar a trabajar, pero que ella no le conoció.

56. La querellante no tiene conocimiento de quién es la persona que toma la decisión de despedir empleados en la empresa.

57. La querellante no tiene conocimiento de quién ocupaba la posición de mantenimiento en la tienda de Villa del Carmen a la fecha de 21 de agosto de 2023.

58. La querellante no tiene conocimiento de quién ocupó la posición de mantenimiento en la tienda de Villa del Carmen después del 21 de agosto de 2023.

59. La querellante no tiene conocimiento de quiénes eran las personas que supervisaban el área de Front End en la tienda de Villa del Carmen al 21 de agosto de 2023.

60. La querellante no tiene conocimiento de quién era Gerente o Asistente de Gerente de la tienda de Villa del Carmen al 21 de agosto de 2023. La querellante alega que cree que es el señor Caraballo.

61. Con posterioridad a su despido, la querellante hizo gestiones para obtener la oportunidad de regresar a trabajar en la Compañía en la posición de empleada de mantenimiento.

62. Luego de su despido, en una ocasión, la querellante tuvo una interacción con la Sra. Melissa Dávila en el área del estacionamiento y le preguntó sobre oportunidades de empleo.

63. La querellante afirma que tenía buena comunicación con la Sra. Melissa Dávila y que se sentía en la libertad de ir a Recursos Humanos a tender cualquier asunto con ella.

64. La querellante acudió a citas médicas luego de su accidente y una vez se reintegró en su puesto, también acudió a éstas. La querellante pudo acudir a sus citas y se reintegrada a trabajar luego de éstas.

65. La querellante no tuvo que faltar a sus citas; pudo acudir a todas.

66. Cuando la querellante comenzó a trabajar en la Compañía, acudió donde la Sra. Melissa Dávila para conocer sobre oportunidades de empleo para su esposo José González. Dávila ofreció una oportunidad de empleo a González en abril de 2023 para trabajar en el Departamento de Produce de la tienda de Villa del Carmen. González renunció días después de haber comenzado a trabajar.

67. La querellante nunca se reportó a la Corporación del Fondo de Seguro del Estado.

68. Con posterioridad al 21 de agosto de 2023, personas del género femenino y masculino han

ocupado la posición de mantenimiento en las tiendas de Bairoa y Villa del Carmen.

69. El Manual de Empleados de la empresa dispone que las siguientes conductas podrán conllevar el despido inmediato:

- Observar una conducta que afecte adversamente el buen nombre y/o imagen de la compañía.

- Insubordinación, faltarle el respeto o negarse a realizar el trabajo asignado y/o realizarlo insatisfactoriamente y/o negligentemente y/o en forma tardía.

- Ser descortés, irrespetuoso con superiores y/o empleados de la compañía o cualquier otra persona en los predios del establecimiento o en otro donde el empleado se encuentre en gestiones de su trabajo o por motivos del mismo.

70. La Compañía nunca entregó a la querellante una acción disciplinaria por razón de ausencias.

El Tribunal de Primera Instancia, reseñó que, no estaba en controversia que, el contrato de empleo suscrito por la señora Báez Martínez expresamente disponía que "ha sido contratada mediante un contrato probatorio de empleo automático según establecido por ley". Asimismo, expresó que, a la fecha de la contratación de la señora Báez Martínez, NAVE le entregó el Manual de Empleados y políticas de la empresa. Señaló que, del manual de empleados surgía que el término probatorio era de noventa (90) días (tres meses), y que, una vez concluido, al empleado se le consideraría uno regular. A tales efectos, el foro apelado concluyó que, el periodo probatorio aplicable era el establecido en el Manual de Empleados, y no el dispuesto por la Ley Núm. 80-1976, *supra.* Por tanto, explicó que, el 21 de agosto de 2024, cuando ocurrió el despido de la señora Báez Martínez, ya habían transcurrido cinco (5) meses desde que había comenzado a ejercer como empleada de mantenimiento en Econo. Por lo que, a su juicio, la señora Báez Martínez ya había cumplido con el periodo probatorio dispuesto en el Manual de Empleados y era empleada regular. Cónsono con lo anterior, el foro

*a quo* expresó que, debía mediar justa causa para que NAVE terminara la relación laboral.

Luego de realizar un análisis de los hechos que suscitaron el despido de la señora Báez Martínez, la primera instancia judicial, resolvió que, su despido "[r]espondió a las necesidades de la Compañía querellada de mantener el buen y normal funcionamiento de la empresa y en consideración a sus normas y procedimientos". De acuerdo a lo anterior, razonó que, dicho despido no podía ser considerado arbitrario ni caprichoso, y que, se constituyó la justa causa contemplada por la Ley Núm. 80-1976, *supra.* Consecuentemente, el foro apelado resolvió que procedía la desestimación sumaria con perjuicio.

En desacuerdo, la señora Báez Martínez acudió ante este foro revisor mediante *Apelación* y esgrimió el siguiente señalamiento de error:

> Erró el Tribunal al desestimar la causa de acción por despido injustificado bajo la Ley 80-196 al existir controversias de hechos y la querellante no haber incurrido en falta que justificara su despido en primera falta.

Por su parte, NAVE presentó el *Alegato de la Parte Apelada.*

Asimismo, el 29 de agosto de 2025, NAVE presentó ante este Tribunal un recurso de *Apelación* identificado alfanuméricamente TA2025AP00301, en la cual esbozó el siguiente señalamiento de error:

> Erró el Tribunal de Primera Instancia al determinar que el término del período probatorio aplicable al empleo de la querellante-apelada es de noventa (90) días.

Mediante *Resolución* emitida el 4 de septiembre de 2025, ordenamos la consolidación de los casos con identificación alfanumérica TA2025AP00225, presentado por la señora Báez Martínez, y TA2025AP00301, presentado por NAVE.

El 9 de septiembre de 2025, la señora Báez Martínez presentó la *Oposición a Apelación.*

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II**

### A. Sentencia Sumaria

La sentencia sumaria es un mecanismo procesal disponible en nuestro ordenamiento que nos permite resolver controversias sin que se requiera llegar a la etapa de juicio.[2] *Segarra Rivera v. Int'l Shipping et al.*, 208 DPR 964 (2022); *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981 (2023); *González Meléndez v. Mun. San Juan et al.*, 212 DPR 601 (2023); *Birriel Colón v. Econo y Otros*, 213 DPR 80, 90 (2023); *Delgado Adorno v. Foot Locker Retail*, 208 DPR 622, 627 (2022); *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro*, 2025 TSPR 1 (2025). La sentencia sumaria está regida por la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, la cual desglosa los requisitos específicos con los que debe cumplir esta norma procesal. *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209, 224 (2015).

Ante la ausencia de una controversia sustancial y real sobre hechos materiales, sólo resta aplicar el derecho pertinente a la controversia. *Serrano Picón v. Multinational Life Ins.*, supra, pág. 992. Cuando se habla de hechos materiales, nos referimos a aquellos que pueden determinar el resultado de la reclamación, de conformidad con el derecho sustantivo aplicable. Así pues, el propósito de la sentencia sumaria es facilitar la pronta, justa y económica solución de los casos que no presenten controversias genuinas de hechos materiales.[3] *Alicea Pérez v. Coop. Seg. Múlt. et al.*, 210 DPR 71 (2022); *Banco Popular de Puerto Rico v. Cable Media*

---

[2] *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010); *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310 (2021); *Rosado Reyes v. Global Healthcare*, 205 DPR 796, 808 (2020); *Delgado Adorno v. Foot Locker Retail*, 208 DPR 622 (2022).

[3] *Velázquez Ortiz v. Mun. de Humacao*, 197 DPR 656, 662-663 (2017); *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 13; *Roldán Flores v. M. Cuebas, Inc.*, 199 DPR 664, 676 (2018).

*of Puerto Rico, Inc. y otro*, supra. Procede dictar sentencia sumaria si de las alegaciones, deposiciones y admisiones ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia admisible, se acredita la inexistencia de una controversia real y sustancial respecto a algún hecho esencial y material y, además, si procede en derecho. *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 13. De la prueba adjunta a la solicitud de sentencia sumaria, deberá surgir preponderadamente la inexistencia de controversia sobre los hechos medulares del caso. *Birriel Colón v. Econo y Otros*, supra, pág. 91.

Cónsono con esto, en el pasado el Tribunal Supremo de Puerto Rico ha afirmado que -utilizado ponderadamente- el mecanismo de sentencia sumaria es un vehículo idóneo para descongestionar los calendarios de los tribunales y evitar el derroche de dinero y tiempo que implica la celebración de un juicio en su fondo. Véase *Carpets & Rugs v. Tropical Reps.*, 175 DPR 615 (2009); *Padín v. Rossi*, 100 DPR 259 (1971); *Pérez Vargas v. Office Depot*, 203 DPR 687 (2019).

La Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, detalla el procedimiento que deben seguir las partes al momento de solicitar que se dicte una sentencia sumaria a su favor. A esos efectos, establece que una solicitud al amparo de ésta deberá incluir: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser

concedido. 32 LPRA Ap. V. R. 36.3. *Rodríguez García v. UCA,* 200 DPR 929, 940 (2018); *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 14.

Cumplidos estos requisitos, el Tribunal Supremo de Puerto Rico expresó además en *Pérez Vargas v. Office Depot*, supra, pág. 699, que el inciso (e) de la Regla 36.3 establece lo siguiente:

> La sentencia solicitada será dictada inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que, como cuestión de derecho, el tribunal debe dictar sentencia sumaria a favor de la parte promovente. El tribunal podrá dictar sentencia sumaria de naturaleza interlocutoria para resolver cualquier controversia entre cualesquiera partes que sea separable de las controversias restantes. Dicha sentencia podrá dictarse a favor o contra cualquier parte en el pleito. Si la parte contraria no presenta la contestación a la sentencia sumaria en el término provisto en esta regla, se entenderá que la moción de sentencia sumaria queda sometida para la consideración del tribunal. 32 LPRA Ap. V, R. 36.3 (e).

La sentencia sumaria no procederá en las instancias que: 1) existan hechos materiales y esenciales controvertidos; 2) haya alegaciones afirmativas en la demanda que no han sido refutadas; 3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o 4) como cuestión de derecho, no proceda. *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 14; *Serrano Picón v. Multinational Life Ins.*, supra, pág. 992.

En armonía con la normativa reseñada, nuestra Máxima Curia ha expresado que, el oponente debe controvertir la prueba presentada con evidencia sustancial y no puede simplemente descansar en sus alegaciones *Birriel Colón v. Econo y Otros,* supra; *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro,* supra; *Ramos Pérez v. Univisión*, supra, págs. 215-216. Las meras afirmaciones no bastan. *Íd.* "Como regla general, para

derrotar una solicitud de sentencia sumaria la parte opositora debe presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente". *Ramos Pérez v. Univisión*, supra, pág. 215. (Cita omitida). *Roldán Flores v. M. Cuebas, Inc.*, supra, pág. 677. Además, se le exige a la parte que se oponga ciertas exigencias adicionales. Primeramente, deberá presentar una relación concisa y organizada de los hechos esenciales y pertinentes que, a su juicio, estén en controversia, citando específicamente los párrafos según fueron enumerados por el promovente de la moción. *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 15. También, deberá enumerar los hechos que no estén en controversia, con indicación de los párrafos o páginas de las declaraciones juradas u otra prueba admisible donde se establezcan estos. *Íd.* En adición, deberá esbozar las razones por las cuales no se debe dictar sentencia sumaria, argumentando el derecho aplicable. *Íd.*

Si el oponente no controvierte los hechos propuestos de la forma en la que lo exige la Regla 36.3 de Procedimiento Civil, *supra*, se podrán considerar como admitidos y se dictará la Sentencia Sumaria en su contra, si procede. *Roldán Flores v. M. Cuebas, Inc.*, supra, pág. 677.

Respecto a la revisión de las sentencias sumarias, el foro apelativo deberá utilizar los mismos criterios que el Tribunal de Primera Instancia. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 114 (2015); *González Meléndez v. Mun. San Juan*, supra. Nuestro Máximo Foro ha sido claro en que, [l]os tribunales apelativos estamos limitados a: (1) considerar los documentos que se presentaron ante el foro de primera instancia; (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y (3) comprobar si el derecho se aplicó de forma correcta. *Birriel Colón v. Econo y Otros*, supra. De acuerdo a lo anterior, el

foro apelativo está obligado a examinar *de novo* la totalidad de los documentos incluidos en el expediente de la forma más favorable al promovido. *Íd.* *Serrano Picón v. Multinational Life Ins.*, supra, pág. 993; *Meléndez González et al. v. M. Cuebas*, supra, pág. 116.

## B. Ley Núm. 80 de 30 de mayo de 1976

La Ley Núm. 80 de 30 de mayo de 1976, conocida como la Ley sobre Despidos Injustificados (Ley Núm. 80), 29 LPRA sec. 185a *et seq.*, según enmendada, regula las acciones relacionadas con el despido de un empleado. Tiene el propósito de proteger al empleado de actuaciones arbitrarias del patrono e imponer remedios económicos que desalienten la práctica de despedir a los empleados injustificadamente. *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 771 (2022); *González Santiago v. Baxter Health Care*, 202 DPR 281, 291 (2019).[4]

En consonancia con su propósito, dicha pieza legislativa establece que "aquellos empleados de comercio, industria o cualquier otro negocio o sitio de empleo que: (1) están contratados sin tiempo determinado; (2) reciben una remuneración, y (3) son despedidos de su cargo, sin que haya mediado una justa causa", tienen derecho al pago de una compensación por su patrono (además del sueldo devengado), típicamente denominada como la mesada. *Rodríguez Gómez v. Multinational Ins.,* 207 DPR 540, 550 (2021); *Indulac v. Unión*, 207 DPR 279, 298 (2021).

No obstante, es meritorio destacar que, según se ha establecido doctrinalmente, [n]uestro ordenamiento laboral no prohíbe el despido de un empleado. Más bien protege "de una forma más efectiva el derecho del obrero puertorriqueño a la tenencia de su empleo [...] a la vez que otorg[a] unos remedios más justicieros y consubstanciales con los daños causados por un despido

---

[4] Véase también, *Romero et als. v. Cabrer Roig et als.*, 191 DPR 643, 649-650 (2014); *SLG Torres-Matundan v. Centro Patología*, 193 DPR 920, 929 (2015).

injustificado".[5] Es decir, nuestro ordenamiento laboral busca proteger los derechos de los trabajadores con el fin de establecer un balance en las relaciones entre patronos y empleados.[6] Por ello, la Ley Núm. 80, *supra*, tiene como propósito proteger el derecho de los trabajadores ante acciones "arbitrarias y caprichosas" de los patronos. En ese sentido, esta normativa le impone el pago de una indemnización conocida como "mesada" al patrono que sin justa causa despida a un empleado que es contratado por un periodo de tiempo indeterminado. *Segarra Rivera v. Int'l Shipping et al.*, págs. 982-983.

Cabe destacar que, la Ley Núm. 80, *supra*, sufrió una serie de enmiendas por medio de la Ley Núm. 4 de 26 de enero de 2017, conocida como Ley de Transformación y Flexibilidad Laboral. Como es sabido, la Ley Núm. 80, *supra*, le imponía al patrono el peso de la prueba y el deber de rebatir la presunción de que el despido había sido injustificado, no obstante, la Ley Núm. 4-2017 "[e]liminó de la ley la frase que le imponía el peso de la prueba al patrono en los casos de [Ley Núm. 80]". *Ortiz Ortiz v. Medtronic*, supra, pág. 776 citando a E. García García, *El legado e implicaciones de la Reforma Laboral de 2017*, 86 Rev. Jur. UPR 1087, 1156 (2017).

Previo a la enmienda de la Ley Núm. 80, una vez un empleado instaba una causa de acción contra su patrono al amparo de la Ley Núm. 80, *supra*, nuestro ordenamiento legal disponía que "el patrono vendrá obligado a alegar, en su contestación a la demanda, los hechos que dieron origen al despido y probar que el mismo estuvo justificado para quedar eximido de cumplir con el pago de la mesada". 29 LPRA 185k(a). *Feliciano Martes v. Sheraton*, supra, pág. 385.

---

[5] Exposición de Motivos, Ley de Indemnización por Despido sin Justa Causa, Ley Núm. 80 de 30 de mayo de 1976, 1976 LPR 267, 268. Véase, además: *Feliciano Martes v. Sheraton*, 182 DPR 368 (2011); *Vélez Cortés v. Baxter*, 179 DPR 455 (2010), citando a *Díaz v. Wyndham Hotel Corp.*, 155 DPR 364 (2001).
[6] *Rivera Figueroa v. The Fuller Brush Co.*, 180 DPR 894, 903 (2011).

Por otro lado, la aplicación de la Ley Núm. 4-2017 es prospectiva, su Art. 1.2 dispone que "[l]os empleados contratados con anterioridad a la vigencia de esta Ley, continuarán disfrutando los mismos derechos y beneficios que tenían previamente, según lo dispuesto expresamente en las secciones de [e]sta". 2 LPRA sec. 121a; *Ortiz Ortiz v. Medtronic*, supra, pág. 776.

Respecto a la justa causa, el Art. 2 de la Ley Núm. 80, *supra,* 29 LPRA sec. 185b, "[...] establece una lista, no taxativa, de las circunstancias que constituyen "justa causa" para el despido de un empleado, seis de ellas atribuidas al empleado y tres al patrono". *Lugo Montalvo v. Sol Meliá Vacation, supra*, pág. 231. Esto se debe a que "el concepto 'justa causa' es dinámico, puesto que se nutre de múltiples y fluidas situaciones imposibles de prever". *SLG Torres-Matundan v. Centro Patología, supra*, pág. 930*; Srio. del Trabajo v. G.P. Inds., Inc.*, 153 DPR 223, 243 (2001).

Conforme dispone el Art. 2 de la precitada Ley 80, dispone que:

> Se entenderá por justa causa para el despido de un empleado aquella que no esté motivada por razones legalmente prohibidas y que no sea producto del mero capricho del patrono. Además, se entenderá por justa causa aquellas razones que afecten el buen y normal funcionamiento de un establecimiento que incluyen, entre otras, las siguientes:
>
> (a)    Que el empleado incurra en un patrón de conducta impropia o desordenada.
>
> (b)    Que el empleado incurra en un patrón de desempeño deficiente, ineficiente, insatisfactorio, pobre, tardío o negligente. Esto incluye incumplir con normas y estándares de calidad y seguridad del patrono, baja productividad, falta de competencia o habilidad para realizar el trabajo a niveles razonables requeridos por el patrono y quejas repetidas de los clientes del patrono.
>
> (c)    Violación reiterada por el empleado de las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.[7]

---

[7] 29 LPRA sec. 185b..

[…]

No obstante, dentro de las enmiendas introducidas por la Ley Núm. 4-2017, a la Ley Núm. 80, *supra,* se encuentra el cambio al periodo probatorio. En específico, el Art. 8 de la Ley Núm. 80, *supra,* dispone lo siguiente:

> Los empleados clasificados como ejecutivos, administradores y profesionales bajo el Federal Labor Standards Act y reglamentación del Departamento del Trabajo y Recursos Humanos, tendrán un periodo probatorio automático de doce (12) meses. El resto de los trabajadores que sean empleados, tendrán un periodo probatorio automático de nueve (9) meses.[8]

El aludido artículo, también dispone que, "el despido de un empleado probatorio **no estará sujeto a los requisitos de indemnizaciones establecidos en esta ley**".[9] (*Énfasis suplido*). Nuestro Máximo Foro ha expresado que, el periodo probatorio en un contrato de empleo "responde precisamente al deseo del obrero de demostrar, y del patrono de comprobar, la competencia y eficiencia del empleado, a cuya terminación pueden retenerse los servicios o prescindirse de ellos dependiendo del juicio que se formule sobre estos extremos". *Cassasus v. Escambron Beach Hotel*, 86 DPR 375, 379 (1962). Cuando se prescinden de los servicios de un empleado dentro del periodo probatorio, este no tendrá causa de acción al amparo de la Ley Núm. 80, *supra. Íd*, pág. 380.

Esbozada la normativa jurídica que enmarca la controversia de epígrafe, procedemos a aplicarla.

### III

En el ejercicio de nuestra función revisora nos corresponde: 1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia le exigen al foro primario; 2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la

---

[8] 29 LPRA sec. 185h.
[9] 29 LPRA sec. 185h.

referida Regla 36, *supra*; 3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos; 4) y de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia[10].

De un ponderado análisis del expediente ante nuestra consideración, surge que, tanto la parte apelante como la parte apelada, en la moción de sentencia sumaria, así como en la oposición, cumplieron sustancialmente con las formalidades dispuestas por la Regla 36 de Procedimiento Civil, *supra*. La parte apelada incluyó las alegaciones de las partes, realizó una enumeración de hechos sobre los cuales entendió eran incontrovertidos, de manera detallada, separada y sustentada. Asimismo, hizo referencia a documentos que obran en el expediente. En cuanto a la oposición, la parte apelante hizo referencia a la prueba documental que entendía que controvertía los hechos alegados por la parte contraria e indicó los párrafos y las páginas a las que hacían referencia[11].

En cumplimiento con la normativa vigente sobre la sentencia sumaria, evaluamos de *novo* las determinaciones de hechos esbozadas por el Tribunal de Primera Instancia y las acogemos por no encontrarse en controversia. Además, determinamos que no existen controversias adicionales.

En su único señalamiento de error, la señora Báez Martínez sostiene que, el foro *a quo* incidió al desestimar la causa de acción

---

[10] *Roldán Flores v. M. Cuebas, Inc.*, supra, pág. 679.
[11] Regla 36.3(b) de Procedimiento Civil, *supra*; *SLG Fernández-Bernal v. RAD-MAN et al.*, supra, pág. 15.

por despido injustificado al amparo de la Ley Núm. 80-1976, *supra,* al existir controversias de hechos y al no haber incurrido en faltas que justificara su despido.

Adelantamos que no le asiste la razón.

Por otro lado, en su recurso, NAVE plantea que, el foro apelado erró al determinar que el término del período probatorio aplicable al empleo de la señora Báez Martínez es de noventa (90) días.

Adelantamos que, le asiste la razón. Veamos.

Por encontrarse intrínsecamente relacionados, discutiremos ambos señalamientos de error de forma conjunta.

Según reseñáramos, las partes de epígrafe suscribieron un contrato de empleo, en el cual se pactó que, la señora Báez Martínez ocuparía la posición de empleada de mantenimiento a partir del 9 de marzo de 2023. La señora Báez Martínez fue despedida el 21 de agosto de 2023. Ante lo anterior, esta presentó una *Querella* en contra de NAVE al amparo de las disposiciones de la Ley Núm. 80-1976, *supra.* Posteriormente, el foro apelado emitió la *Sentencia* cuya revisión nos compete. En primer lugar, concluyó que, el periodo probatorio que aplicaba a la señora Báez Martínez era el de noventa (90) días según dispuesto en el Manual de Empleados. De igual manera, determinó que, el despido de la señora Báez Martínez no podía ser considerado arbitrario ni caprichoso, y que, se constituyó la justa causa contemplada por la Ley Núm. 80-1976, *supra.* Por lo que, desestimó con perjuicio la *Querella.*

Si bien es cierto que, el foro de primera instancia actuó correctamente al desestimar con perjuicio la *Querella* de epígrafe, no coincidimos con el fundamento en el cual basó su dictamen. Ello, puesto que, el periodo probatorio aplicable al caso de epígrafe es el provisto por el Art. 8 de la Ley Núm. 80-1976, *supra,* según enmendado por la Ley 4-2017, que dispone lo siguiente:

> Los empleados clasificados como ejecutivos, administradores y profesionales bajo el *Federal Labor Standards Act* y reglamentación del Departamento del Trabajo y Recursos Humanos, tendrán un periodo probatorio automático de doce (12) meses. El resto de los trabajadores que sean empleados, tendrán un **periodo probatorio automático de nueve (9) meses**.[12] (*Énfasis suplido*).

El *Contrato de Empleo por Tiempo Indefinido*, pactado por las partes, en su cláusula número 1 establece de forma clara y precisa que, la señora Báez Martínez fue contratada mediante un contrato de empleo **probatorio automático establecido por ley**. Habida cuenta que, las partes suscribieron el aludido contrato, el día 8 de marzo de 2023, con fecha de comienzo al día siguiente, y que en el mismo se pactó el período probatorio establecido por la Ley, para esa fecha, ya había entrado en vigor la enmienda introducida a la Ley Núm. 80-1976, *supra*, por la Ley 4-2017. Es decir, aplica el periodo probatorio automático de **nueve (9) meses**, y no el de noventa (90) días, determinado por el foro primario.

Respecto a la voluntad de las partes para contratar, el artículo 2.8 de la Ley Núm. 4-2017, dispone que "las partes en un contrato de empleo podrán establecer los pactos, cláusulas y condiciones que tengan por convenientes, siempre que no sean contrarios a las leyes, a la moral, ni al orden público".[13] Dicho contrato, quedará perfeccionado por el mero consentimiento de las partes, y desde entonces se obligará, no solo al cumplimiento de lo expresamente pactado, sino también todas las consecuencias que, según su naturaleza sean conformes a la ley, la buena fe, los usos y las costumbres del comercio generalmente observadas, salvo que se disponga de otra manera en una ley especial.[14] De igual manera, el aludido estatuto establece que, "las obligaciones que nacen de un

---

[12] 29 LPRA sec. 185h.
[13] 22 LPRA sec. 112g.
[14] 22 LPRA sec. 122i.

contrato de empleo **tendrán fuerza de ley entre las partes contratantes** y deben cumplirse a tenor con el mismo".

Conforme a lo antes expuesto, el contrato suscrito entre las partes tiene fuerza de ley entre estas. Por tanto, aplica el periodo probatorio establecido por ley acordado en el contrato de empleo suscrito entre la señora Báez Martínez y NAVE.

Resuelto lo anterior, colegimos que, por motivo de que, el despido de la señora Báez Martínez fue llevado a cabo dentro del periodo probatorio de nueve (9) meses, dispuesto por la Ley Núm. 80-1976, *supra*, según enmendada, no está sujeto a los requisitos de indemnizaciones establecidos en dicho estatuto.[15] Es por lo que, procede la desestimación con perjuicio de la *Querella* por alegado despido injustificado al amparo de la Ley núm. 8-1976, *supra.*

**IV**

Por los fundamentos que anteceden, se *modifica* el dictamen apelado a los fines de disponer que, el periodo probatorio de aplicación es el de nueves (9) meses, establecido por la Ley Núm. 80-1976, *infra*, según enmendada, y así modificada, se confirma.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[15] 29 LPRA sec. 185h.